1  UNITED STATES DISTRICT COURT

2  NORTHERN DISTRICT OF NEW YORK

3  ----------------------------------------------------------

4

5  UNITED STATES OF AMERICA,

6              -versus-                        06-CR-154

7  LEWIS LEE,

8                      Defendant.

9

10  ----------------------------------------------------------

11              TRANSCRIPT OF SENTENCING PROCEEDINGS

12  held in and for the United States District Court, Northern

13  District of New York, at the Federal Building and

14  Courthouse, 15 Henry Street, Binghamton, New York, on

15  FRIDAY, October 27, 2006, before the HON. THOMAS J. McAVOY,

16  Senior United States District Court Judge, PRESIDING.

17

18

19

20

21

22

23

24

25

1    APPEARANCES:

2

3    FOR THE GOVERNMENT:

4    UNITED STATES ATTORNEY'S OFFICE

5    BY:  MIROSLAV LOVRIC, AUSA

6         Binghamton, New York

7

8

9    FOR THE DEFENDANT:

10   FEDERAL PUBLIC DEFENDER'S OFFICE

11   BY:  LISA PEEBLES, AFPD

12        Syracuse, New York

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE CLERK:  United States of America versus
2   Lewis Lee, 2006-CR-154.  Please state appearances for the
3   record.
4          MR. LOVRIC:  Miroslav Lovric for the
5   government.  Good morning, your Honor.
6          THE COURT:  Morning, Mr. Lovric.
7          MISS PEEBLES:  Lisa Peebles appearing on
8   behalf of Mr. Lee.  Mr. Lee is also present.  Good morning,
9   your Honor.
10         THE COURT:  Good morning.  Please come forward
11  with the defendant.  All right.  The Court believes that you
12  had an opportunity to examine the presentence report and the
13  addendum filed by the probation officer.
14         Have you had a chance to speak with your
15  client, Mr. Lee, about the contents of that report?
16         MISS PEEBLES:  I have, your Honor.
17         THE COURT:  Mr. Lee, did you have an
18  opportunity to read over the presentence report and the
19  addendum to the report?
20         THE DEFENDANT:  Yes, your Honor.
21         THE COURT:  Did you talk the contents of the
22  report, the addendum, over with your attorney, Miss Peebles?
23         THE DEFENDANT:  Yes, your Honor.
24         THE COURT:  All right.  Now, Miss Peebles, the
25  Court knows that you've raised several issues and there's

1   been a response from the government.  There's been a

2   sentencing memoranda filed in this case so I think what we

3   have to do at this point in time, before the Court decides

4   how much of the factual content of the presentence report to

5   accept, is to discuss some of those issues.  Some of which

6   will perhaps drive part of the Court's sentence in this case.

7           I think the first one we might deal with is

8   the allegation that your client had sexual contact with the

9   victim's younger sister, Anna.  You have filed documents

10  denying that and Mr. Lee denies that also.  And I think that

11  arises in the context of maybe the victim's mother wondering

12  about whether or not that happened and I don't know if

13  there's anything more than that before the Court on that

14  particular issue.

15          Can you enlighten me on that?

16          MISS PEEBLES:  Your Honor, the only thing that

17  I would note is when I read the presentence report, it seemed

18  to me to be commentary that the mother of the victim in this

19  case gave out of anguish or some other reasoning but I don't

20  think there's any basis, in fact, to even suggest that.  I

21  don't think there's any evidence whatsoever to support that

22  type of allegation or even an insinuation, Judge.  I think

23  it's really inflammatory and unfairly prejudicial to Mr. Lee,

24  particularly because this report will follow him to the

25  Bureau of Prisons and, in fact, while she has the right to

1  make certain comments, what her beliefs are and feelings, I

2  don't think that that type of comment, without any basis in

3  fact to support it, should remain in the presentence report,

4  your Honor.

5          THE COURT:  Well, you know, the Court's are

6  not really in the business of editing presentence reports.

7  I'm in the business of receiving the information gathered by

8  the Probation Department, considering it and deciding whether

9  or not it should form the basis of any part of my sentence

10 here.

11         Let me ask Mr. Lovric, what's your take on

12 that allegation?

13         MR. LOVRIC:  Judge, our view has always been

14 of the presentence reports that, first of all, they're a

15 confidential court document.  So although I recognize that

16 this report will follow Mr. Lee throughout the system, it is

17 not a public document.  It's actually very restricted in

18 terms of who can see it, who can have copies of it and the

19 people that will see this are usually going to be the type of

20 people that are involved in addressing either certain

21 counseling or certain other programs that Mr. Lee is involved

22 with.  As far as the contents of the information, we think

23 it's appropriate for that type of information to be there for

24 one particular reason.  In this case it's information being

25 provided by a victim or someone that's in the circle of a

1    victim in this case and that person's observations about

2    another family member who has been affected by Mr. Lee's

3    conduct.  So the victim, the mother in this case, is relaying

4    information about her observations of another daughter and

5    what she's observed and what may have caused or may not that

6    type of behavior.  That may be important to someone down the

7    road when Mr. Lee is in federal prison and either in some

8    type of programs or some type of treatment so that the

9    professional may have information to allow that professional

10   to make inquiry of Mr. Lee in terms of his problems, his --

11   whatever you want to call it -- addiction and so on.  And

12   because it's such a limited scope that the document is

13   readily available, I just don't think that we,

14   nonprofessionals, with all due respect, should be editing

15   information that may be helpful to someone to try to help

16   Mr. Lee down the road.

17            THE COURT:  I understand that the victim's

18   mother has made a request to speak in open court here today.

19   So I think I want to hear what she has to say considering

20   this particular issue, as well.

21            MR. LOVRIC:  Okay.

22            THE COURT:  Well, there's some other issues

23   that we have to address and one of them has to do with the

24   scoring of the Probation Department, and more particularly

25   the defendant has objected to assessing two additional points

1  to the base offense level, among other things, for an

2  assessment that there was a vulnerable victim in the

3  situation.

4          So, you want to address me, Miss Peebles, as

5  to that scoring factor.

6          MISS PEEBLES:  Yes, your Honor.  In my

7  sentencing memorandum, I detail the basis of our objection

8  citing Second Circuit case law, among other circuits, your

9  Honor, and in McCall, the Second Circuit decided that it is

10 essentially a two-prong test to determine whether or not that

11 type of enhancement would apply under the guidelines and in

12 particular there has to be a nexus between the crime and what

13 makes the victim vulnerable.

14          Secondarily, it also has to show or the

15 enhancement has to be supported in that the defendant would

16 have to have targeted the particular pool of vulnerable

17 victim out of all other potential victims and I don't think

18 that's in any way supported by any of the facts in this case.

19 Specifically, probation put in the report that because the

20 victim in this case was home schooled and from a rural

21 Upstate community, meaning she grew up on a farm, that would

22 be the basis for an enhancement.  I think that's semi

23 degrading to people who are living on farms and home

24 schooled.  It doesn't mean they're uneducated or not familiar

25 with world events.  Your Honor, I think that, in fact, it

1  actually supports not applying that type of enhancement.  It

2  shows that she has family support, support strong enough to

3  where she could be home schooled on a regular basis.  And

4  there are certain criteria that have to be followed for

5  anybody who decides to home school in order for the children

6  to be getting credit and be able to graduate with diplomas,

7  your Honor.  So, I don't think that that in and of itself

8  would be a basis.  All of the people in the community that

9  Mr. Lee was involved with were all from rural farms and

10 communities.  He was the pastor of the church.  He's getting

11 an enhancement for position of abuse of trust and an

12 enhancement because of the age of the victim.  He's getting

13 those enhancements.  To lob on another two level enhancement,

14 simply because she comes from a home schooled family and

15 lives on a farm in Upstate New York, your Honor, I submit

16 that anybody that Mr. Lee came in contact with at this

17 church, your Honor, were from a rural Upstate community.  She

18 was not targeted out of a particular pool of potential

19 victims and I think that's what's required under the Second

20 Circuit case law in McCall, your Honor.  So I don't think

21 there's a basis, in fact, for that enhancement.  I would ask

22 the Court not to apply it.

23            THE COURT:  Mr. Lovric.

24            MR. LOVRIC:  Judge, we respectfully disagree.

25 In our sentencing memoranda we indicated that we think a

1  couple of things make this distinguishable.  First of all, in

2  our view the Second Circuit and other circuits have never

3  said that this application is not applicable if age has been

4  taken into account by another sentencing factor.  In our

5  view, this application actually has to be applied to a very

6  victim-specific scenario and in this particular case we

7  believe it applies for the following reasons:  In addition to

8  Mr. Lee getting an enhancement for abuse of trust based upon

9  his position as a pastor and in addition to age being taken

10 into account under the sentencing guidelines, age and abuse

11 of trust do not address those vulnerable victim attributes

12 that we believe exist in this case.  And particularly what we

13 have in this case is Mr. Lee had engaged in this conduct with

14 a minor and that minor had some very, very specific and

15 cumulative type of life's experiences or lack thereof.  In

16 our view, Mr. Lee intentionally did this with this minor and

17 this was able to occur because of this minor's attributes.

18 Those include, and I agree, I do not mean to suggest that

19 everyone that grows up in Upstate New York is somehow

20 vulnerable to life's experiences but that's just one of the

21 factors.  You have a minor who at the time that Mr. Lee began

22 to groom, and I use the word groom her, she was about 13

23 years old.  You have a minor that's 13.  You have a minor

24 that grew up on a dairy farm where life on a dairy farm is, I

25 think we all agree, significantly different than life in

1    Manhattan, New York.  You have this minor that is in a very,

2    very rural, secluded area.  Grew up on a dairy farm.  Life on

3    a farm and life at home and being in a home school situation.

4    What does that mean?  It means that this minor had less

5    life's experiences than a 13-to-15-year-old kid growing up in

6    the middle of Manhattan.  I don't think it's a far stretch

7    for us to see that a kid growing up in New York City is going

8    to be perhaps a little bit more quick to recognize certain

9    things in life that happened to minors, including the type of

10   actions that Mr. Lee engaged in.  This minor did not have

11   those attributes because, one, she grew up in the area she

12   did.  She grew up in a rural farm, dairy farm situation,

13   mostly interacted with her siblings and other kids in her

14   community which live a fairly sheltered life.  And the home

15   schooling and very, very basic fundamental living are

16   attributes that this minor had.  I don't think it's a stretch

17   for us, now in hindsight, to see that this is exactly the

18   type of minor that was very, very susceptible and very

19   vulnerable to the conduct of a Mr. Lee.  And to put it very

20   bluntly, Judge, it's our view, at least that's why Mr. Lee

21   chose this minor, is to engage in the acts he did because he

22   could exert all of his life's experiences at the age of 55

23   upon this minor who had a lot less life's experiences than

24   perhaps another 13 or 15 year old in a large metropolitan

25   area.  That's our only point.  That's why we think it applies

because it doesn't just say look at age and it just doesn't

say look at the abuse of trust position.  It says look at the

minor and none of the other factors and enhancements in the

guidelines focus on the minor, the victim, and this

enhancement does.  So that it says look at this person and

what qualities or life's experiences or lack of do -- lack

thereof and how did that contribute to the defendant being

able to accomplish what he did.

THE COURT:  All right.  Well, the Court has

given this a lot of thought and I think one way to look at

it, aside from the way that the Second Circuit and other

circuits have looked at it, in this particular case, is to

examine the totality of the circumstances surrounding the

victim.  And here the victim's age, of course, is one set of

circumstances and that -- at the age of 13 on through the age

of 15 there was a lot of contact between the defendant and

the victim.  And the fact that the victim did not attend

public school, was home schooled, certainly is nothing

against that form of education.  Sometimes it can be superior

to send someone to public school but all of us who went to

public schools or parochial schools or came up through

schooling where you're in contact with other children, peers,

realize that you -- the experience you have, interact with

peers and adults who are supervising, controlling the

education, those peers can be rough experiences and can be

1   difficult.  They can teach you that everyone out there in the

2   world is not friendly and looking out for your best interest

3   and you have constant interaction, action and reaction, with

4   those with whom you associate with in the public sector and I

5   think that somebody who doesn't have that and, once again,

6   I'm not saying anything against home schooling.  I'm just

7   saying that that changes that person based on the lack of

8   that type of experience that the Court has just iterated.

9           On top of that, without going into any great

10  detail, there's information in the presentence report that

11  this victim had very adverse circumstances of a sexual nature

12  on two occasions prior to Mr. Lee having met her and the

13  Court also believes that that kind of experience, without

14  going again into any detail, would in the Court's judgment

15  make this particular young lady more vulnerable than someone

16  who hadn't had those type of experiences.  Now, I'm not a

17  doctor.  I'm not a psychologist.  I'm not a psychiatrist.

18  I'm not speaking as an expert in any of those fields.  I'm

19  speaking as a judge whose had some 20 years of experience on

20  the bench and 23 and a half years experience of practicing

21  law before I got on the bench.  I just think that type of

22  experience based on the knowledge I gained over the years

23  would and could make someone more vulnerable, more

24  particularly vulnerable than someone who didn't have those

25  types of problems prior to meeting Mr. Lee.

1          So, the Court feels based upon the totality of

2     the circumstances that that enhancement should apply and I'm

3     going to apply it in the sentencing.  Once again, revisiting

4     the allegation with Anna, the younger daughter, I'm going to

5     withhold on that until I've heard what the victim's mother

6     has to say in that scoring.  Also, there's been questions

7     raised regarding the fact the Court is mandated under certain

8     circumstances to order restitution.  And questions were

9     raised about restitution in this case and, of course, there's

10    a little bit of case law out there on that, but not an awful

11    lot.  I'd like to know the defendant's position with regard

12    to that before I make any kind of order of restitution.

13          MISS PEEBLES:  Your Honor, it was brought to

14    my attention this morning that Mr. Lovric has a submission

15    from a victim's advocate group, that the victim in this case

16    is intending on perhaps looking in to getting into some kind

17    of inpatient program for a year.  Your Honor, that -- it may

18    or may not happen.  I think it might be an issue with regard

19    to that.  As the Court stated if, in fact, the victim in this

20    case had previously been sexually abused and that would come

21    into play as to how much more responsibility Mr. Lee should

22    have to pay in restitution, if there were underlying

23    psychological issues and if she is going to attend some kind

24    of year long inpatient program it would, from what I was

25    told, cost over $52,000 --

1           THE COURT:  I'm sorry.  50?

2           MISS PEEBLES:  $52,000.

3           THE COURT:  Thank you.

4           MISS PEEBLES:  And I think in that sense, your

5    Honor, we would take issue with some of that.  We'd need a

6    lot more information.  We'd have to verify that, in fact, she

7    was attending the program.  We may have to get an expert

8    involved to determine what responsibility Mr. Lee would have

9    and what he's contributed to her psychological problems as

10   well, your Honor.  So, I'm not in a position at this point to

11   contest an order that is just mere speculation at this point

12   in terms of what costs might accumulate down the road

13   concerning her treatment.  I note Mr. Lee is more than

14   willing to pay restitution in this case.  He's indicated

15   that.  He will pay what is owed according to the Court.  What

16   the Court deems appropriate.  He wanted to see some receipts

17   for some of the miscellaneous expenses that they set forth in

18   the report.  I think this was over $900 that wasn't really

19   specified in term of how that money was accumulated.  If the

20   Court deems it appropriate, Mr. Lee obviously accepts

21   responsibility for the expense and we'd gladly make

22   restitution, your Honor, if that's his position.

23           THE COURT:  So with the 13,000 plus figure

24   that's in the report, the Court thinks there has been

25   submissions made that support that level of restitution.  And

1   you've gotten copies of documents from the Probation

2   Department which speak to that and I think that's one of the

3   things you're referring to, although there was a gray area of

4   approximately nine hundred dollars.  The Court's going to

5   find, at least as to those things; that is, payment for

6   treatment of family members of the victim and the victim's

7   treatment and mental health care so far to this point is

8   certainly an appropriate item of restitution, as well as the

9   other damages submitted because the attention of the family

10  was reverted entirely because of their missing daughter from

11  taking care of the farm operation.  There was a drop in milk

12  production.  There was a loss of other types of that nature

13  that was directly responsible for monetary damage.  The Court

14  finds that those things were proximately caused, as well as

15  the money expended, going out and putting up flyers and the

16  fact that their time was taken away from conducting the

17  farming operation.  All of the expenses that flow directly

18  from that.  The Court doesn't see any intervening cause that

19  would break the chain of causality between the fact that the

20  daughter was removed and that they were desperately trying to

21  find her and those things that occurred as a result of that.

22          So, Mr. Lovric, how can this Court order

23  restitution for expenses that may occur in the future insofar

24  as treatment for the victim is concerned but the Court

25  doesn't have any thing before it, at least to this point, as

1  to whether or not she's going to need that kind of treatment,

2  how much it's going to cost and how much of that treatment,

3  if any, is related directly to this victim's -- this

4  defendant's actions and the Court would think as a basic

5  matter that if it's already found that the victim was more

6  vulnerable because of the prior sexual encounters, if she

7  goes through this experience with Mr. Lee, that even though

8  part of that might be attributable to what happened to her

9  when she was younger, when Mr. Lee found her she already had

10 those frailties.  Kind of like the egg shell plaintiff theory

11 in New York State law that they take the victim as they find

12 them.  So, he'd be responsible for the entire costs of any

13 medical care or treatment, psychological/psychiatric therapy.

14 I would think that's the case but I would probably have to

15 have something before me upon which I can say, well, this is

16 the plan and here's somebody that says this is what it's

17 going to cost and why it's going to cost that much.

18          Do you have such information for the Court?

19          MR. LOVRIC:  Well, I think the Court can

20 structure the sentence of the -- first of all, we have two

21 sides or two separate areas as far as restitution.  The

22 restitution figure in the probation report, the 13,900 some

23 dollars, that specifically relates to quantified harm that

24 has been caused and has been calculated directly as a result

25 of the defendant's actions.  The second part that we're now

1   talking about, Judge, has to do also with harm that Mr. Lee

2   caused because Mr. Lee is responsible for the minor having a

3   tremendous amount of issues, both behavioral and perhaps

4   psychological and otherwise, and these specifically relate to

5   harm that's been caused, but harm that has not been either

6   addressed or in some way remedied.  And that's the only, I

7   think, issue that kind of hovers over this area.

8                Now, the victim's family has gone to a

9   facility and found a facility that they believe from

10  everything they know would be an appropriate type of program

11  and this facility has done a calculation of how long and what

12  the care would cost, and this cost is directly related to the

13  harm that's already been caused.  So, we're not talking about

14  some harm that is going to appear or harm that's going to

15  take place in the future.  The harm has been caused.  The

16  defendant has caused the victim harm and the victim is now

17  looking for professional help to remedy that harm and the

18  Court can, in my view, order restitution that this facility

19  indicates would be the cost for a year treatment.

20               THE COURT:  I don't know what facility you're

21  talking about.  I have no information whatsoever on this

22  topic, except what I've heard here in Court this morning but

23  if you have some information, I'd be glad to look at it.

24               MR. LOVRIC:  Judge, I can -- I've shown the

25  defense counsel what I have which is a, I believe, an

1  estimate from the facility.  It's on what appears to be

2  letterhead.  It has calculations.  I thought or I believe

3  that probation had a copy of this.

4          THE COURT:  I don't think I've seen it but

5  maybe I have.  I don't believe so.  In fact, I know I haven't

6  seen it.  If you want to hand it up I'll take a look at it.

7          MR. LOVRIC:  Sure, Judge.

8          THE COURT:  Thank you.

9          MR. LOVRIC:  If I can talk while the Court

10 looks at it.

11         THE COURT:  No, you keep talking.

12         MR. LOVRIC:  My point, Judge, is that in my

13 view the Court can order restitution up to the amount that

14 this facility indicates would be required in order for the

15 victim to get adequate counseling.  The Court can also, in

16 order to make sure, as I think counsel asked me earlier, in

17 order to make sure that the money is spent on this program,

18 and if it's less than this program -- less than what their

19 estimate is, then by all means the defendant shouldn't have

20 to pay money that is not specifically going to the program.

21 So, for example, if after eight months the victim has

22 successfully completed the program and has done very well and

23 it's not required for the additional four months, by all

24 means he's not going to be paying those additional amounts

25 that are not being inputted into the program.  But I think if

1   the Court orders restitution up to that amount, with the

2   proviso that that is conditioned upon the victim being

3   provided care in the manner that is being addressed and that

4   the money actually is being expended in that program, and

5   that the victim is going to that program in order to address

6   those concerns, and then obviously if all of the money is not

7   required, the defendant would not be obligated to pay.  If it

8   is required, then I think he should pay.

9                    THE COURT:  Okay.  Well that makes sense to

10  the Court.

11                   MISS PEEBLES:  Your Honor, can I be heard on

12  that?

13                   THE COURT:  Sure.

14                   MISS PEEBLES:  It seems to me that at the

15  midnight hour in getting this type of submission to the Court

16  and they're asking for a lot of restitution, if she

17  participates in this program, again I state that I don't know

18  what Mr. Lee's responsibility would be if you look into some

19  of her psychological issues apparently that existed before

20  Mr. Lee entered her life.  I think that those would or should

21  have an impact on the type of treatment that she might need,

22  which is probably more significant but again, your Honor, the

23  question becomes when does it stop if she needs treatment for

24  the rest of her life and I don't think that it would be

25  appropriate for Mr. Lee to have that looming over his head

1   with no end in sight.  This could have been done.  This case

2   has been pending for quite a long time now.  The sentencing

3   date was adjourned.  It's been on the Court's calendar.  I

4   don't think that coming into Court in the morning before I've

5   even had an opportunity to discuss with another expert to

6   look into the matter where I'm prepared to make an argument

7   concerning this amount because it has a significant amount of

8   money that Mr. Lee's not going to be able to afford to pay

9   given the gravity of sentence of incarceration that he's

10  serving.

11              So, in light of all those factors, Judge, I

12  don't think it's appropriate to leave an open ended

13  restitution requirement that Mr. Lee may or may not have to

14  pay down the road depending on what treatment the victim

15  decides to try to receive as a result of this.

16              THE COURT:  Well, nobody's told this Court

17  that the victim needed any treatment whatsoever from anyone

18  before Mr. Lee did what he did to her.  That's one thing.

19  The second thing is that if it turns out that she needs

20  therapy for a longer period of time than this one year

21  document talks about, then the Court certainly, if it

22  believed there was cause and relation, would order that no

23  matter how much it's going to cost Mr. Lee in the future.

24  Yeah, it's got to hang over his head.  He caused it to be

25  there.  But are you asking me for an adjournment so that you

can bring before the Court information that may cause the

Court to do something else in order that this 13,900 plus

dollars and $52,000 --

          MISS PEEBLES:  I don't know how the Court's

planning on structuring the restitution order and that

somewhat concerns me given me the amount of money they're

requesting at this point.  If I had an idea of how the

Court -- again, Mr. Lee accepts responsibility for having to

reimburse the victim for any type of treatment that she may

need.  It just, your Honor, I do think that we need more

information and I would like some clarity on how it would --

how the order would be, your Honor.

          THE COURT:  Well, first of all, the Second

Circuit has instructed the Court and District Courts, many

times, that unless somebody who's paying restitution is

clearly -- has clearly enough amount of money to pay

immediately, like the government has requested in his

memorandum, the Court has to structure the restitution over a

period of time.  Structuring part of the payments to be made

while the defendant is incarcerated, as you say, it's going

to be for a substantial amount of time.  He's going to have

to pay from -- pay during that period of time a certain

amount and if after he's released he's going to have to pay

additional amounts and the Court plans on structuring it that

way.  Is that the kind of structure you're talking about or

1  you asking how the Court is going to direct the additional

2  52,000 or any other monies that might be necessary for

3  treatment would be structured?  That will be rolled into the

4  full restitution amount.

5           MISS PEEBLES:  Meaning the Court's not going

6  to order a restitution amount in the amount of $52,000.  The

7  Court is merely going to order restitution or reimbursement

8  for treatment that the victim completes or attends that

9  Mr. Lee would be responsible for.  And then would counsel,

10  depending on the expense, would counsel have an opportunity

11  to show a causal nexus to the Court with regard to the amount

12  that may or may not be owed, I guess would be my question?

13  That would be the only concern I would have, Judge.

14           THE COURT:  I don't think the sentencing Court

15  can be like a worker's compensation court and when somebody

16  comes in, evidence comes in that she goes down to this

17  program, she's there for two months, now you say I have

18  information that she doesn't need this anymore and you've got

19  a medical expert to come in and she's done there receiving

20  this treatment.  We have to reconvene time and after time to

21  see if she's still in need of treatment.  I think some courts

22  can do that in some situations.  I don't think that's

23  appropriate.  More appropriate to me would be if I give

24  you -- if I bifurcate the issue of restitution.  I'm not sure

25  I can do that.  I'll do it anyways and see what happens.

1   You'll be given an opportunity to come forward with evidence

2   that says that she's not going to need this treatment in the

3   future.  Right now the only evidence I have before me is a

4   plan from an institution that treats a lot of people but it

5   doesn't say anything about her need for that particular

6   treatment.  And the Court would be glad to hear testimony

7   from both sides as to whether or not it's needed and if it is

8   the Court is sure going to order it.  But I think that way,

9   at least we can address it all at one time.  I don't think we

10  can address it incrementally and say, well, he's only going

11  to be liable for what has past.  It's going to be what

12  somebody tells me is needed.  Now here's what it's going to

13  cost, I'll order that.  What Mr. Lovric says is a way of

14  handling it is if she, during the course of that treatment

15  doesn't need it anymore, sure, Mr. Lee shouldn't be

16  responsible for anymore money than the cost incurred and the

17  Court agrees with that.

18              So, Mr. Lovric, what's your position on that?

19              MR. LOVRIC:  Yeah, Judge.  I mean, to put it

20  simply I'm not very sympathetic to the defense argument that

21  Mr. Lee should somehow have the opportunity to monitor the

22  victim's --

23              THE COURT:  I said I'm not going to do that.

24              MR. LOVRIC:  Okay.  Plainly put, Judge, I

25  think this Court has not only the power but also a very

1  strong obligation to order restitution that Mr. Lee pay for

2  counseling and the type of program needed for this victim to

3  enter.

4           THE COURT:  Do you think the Court should not

5  hear evidence about whether or not there's a need for this

6  victim to be sent to a facility like this, that the defense

7  shouldn't be given an opportunity to bring that before the

8  Court?

9           MR. LOVRIC:  I do object to that, Judge.

10          THE COURT:  Why?

11          MR. LOVRIC:  Because the bottom line is, I

12 believe there's more than enough evidence and information

13 before this Court to the that the victim has suffered

14 psychological and behavioral harm.  For us -- and with all

15 due respect to courts, to now delve into and have

16 psychiatrists and psychologists come forward and debate how

17 much time and how much money should be spent, I find it

18 repugnant, to be quite honest, Judge, which is you have a

19 15-year-old kid who has been sexually abused by this

20 defendant and for anybody to say that this 15-year-old kid

21 doesn't require some very substantial rehabilitative

22 measures, I think we all have to be born on another planet.

23 So for us to haggle over dollars and cents, Judge, I

24 personally find it very repugnant, which is I think the Court

25 should hold this defendant accountable for the harm that he's

1   caused and I do disagree completely with the defense's notion

2   that somehow partial harm was caused by other people before

3   he encountered this victim.  To put it bluntly, Judge, this

4   defendant chose his victim and he victimized her and he then,

5   on top of whatever harm had been done to her, catapulted that

6   exponentially.  Now he'd like to redistribute, reapportion it

7   as if it was like some bank fraud case.

8                   THE COURT:  The Court has already addressed

9   that and said the Court doesn't believe that's the way it's

10  going to be, but I'm asking you if you're standing here and

11  representing to this Court that a defendant should not be

12  able to present evidence before the Court that any type of

13  treatment is needed, the information about the institution,

14  which may very well be what's appropriate in this case.  I'm

15  not taking a position on that one way or another right this

16  minute.  Just came to the defendant I guess today or

17  yesterday.  I mean, shouldn't the defendant have a chance to

18  address the Court about it?

19                  MR. LOVRIC:  No.

20                  THE COURT:  No?

21                  MR. LOVRIC:  Here's what's going to happen,

22  Judge.  This family is going to send their daughter to a

23  rehabilitation center regardless of whether this defendant

24  pays for it or not.  This family is going to do what it takes

25  to get their daughter in the best --

1          THE COURT:  I haven't heard from anybody that

2    the family is going to send her there.

3          MR. LOVRIC:  The family has represented to the

4    government, to the Probation Department and I believe she'll

5    tell you this when she speaks, the mother, that their

6    intention is to send their child to get treatment.  For this

7    defendant to somehow inject himself and say, well, prove to

8    me that she needs treatment goes counter to the entire rules

9    and laws of restitution.  The courts have said and the

10   statutes and Congress has said you, defendant, when you cause

11   harm you will be liable for it regardless of whether you

12   think the victim ought to get full compensation or could do

13   better or can do without it.  That's not the standard.  This

14   family --

15         THE COURT:  Nobody said it was, Mr. Lovric.

16         MR. LOVRIC:  This family --

17         THE COURT:  You're putting up a strongman and

18   knocking him down.  The Court's not disagreeing with any of

19   that.  The Court only pauses because this information just

20   came -- I just heard about it this morning --

21         MR. LOVRIC:  I did too.

22         THE COURT:  -- for the first time.  The Court

23   only pauses because the defendant hasn't had an opportunity

24   to address that with whatever evidence it might come up with.

25         MR. LOVRIC:  I'm simply suggesting that the

1   Court has a very easy mechanism, which is this defendant will

2   not be punished for anything that he doesn't -- this

3   defendant will not be caused to pay for anything that doesn't

4   go to direct rehabilitation for the victim.  The way the

5   Court can structure it in my view is to say the defendant is

6   hereby ordered to pay restitution, restitution of the second

7   portion dealing with the rehabilitation of the victim up to

8   the amount of $52,800.  The defendant is not required to pay

9   any money that is not expended or incurred by the victim as

10  to rehabilitation.  So, if the victim does not choose to go

11  to rehabilitation or any program or after five months, three

12  months, finds that things have been worked out sufficiently,

13  the defendant won't be liable for it.

14              THE COURT:  Okay.  Well, the Court will

15  consider all that when I get to the sentencing.  Thanks for

16  hearing from both sides on that issue.

17              Let's see.  Was there any other factual

18  related matter that the Court had to address before I hear

19  what you have to say on behalf of your client?

20              MISS PEEBLES:  No, your Honor, I think that

21  covered it.

22              THE COURT:  Why don't you tell me what you

23  want to say on behalf of your client.  The Court's going to

24  adopt the factual content of the presentence report by a

25  preponderance of the evidence, with the exception of the

1  question of the touching of the younger daughter.  We'll hear

2  about that later, so go ahead.

3           MISS PEEBLES:  Your Honor, I think in my

4  sentencing memorandum that was filed with the Court, I set

5  forth Mr. Lee's feelings and position --

6           THE COURT:  You did.

7           MISS PEEBLES:  -- with regard to his conduct.

8  I think it fully elaborates on how he feels what he did.  He

9  knows he left a path of destruction behind.  He doesn't

10  mitigate it.  He took responsibility.  He came into this

11  Court.  He recognizes he hurt not only the victim's family

12  but his own family as well among other people.  He accepts

13  that, your Honor, and he is not attempting at all to mitigate

14  or minimize anything that he's done.  He simply wants to do

15  what he can so it wouldn't ever happen again.  Get treatment

16  if that's, in fact, is what's going to be required for him as

17  well.  He wants to make sure that restitution is paid to the

18  family in this case.  He knows what he did was wrong.  All of

19  those things, your Honor, and I think that Mr. Lee accepts

20  whatever punishment the Court deems is appropriate under the

21  circumstances of this case.  I do note that he has support

22  from his family.  His brother Dewey submitted a letter to the

23  Court.

24           THE COURT:  I read the letter.

25           MISS PEEBLES:  He has remained supportive of

1  his brother, Mr. Lee.  He comes from somewhat of a distorted

2  background himself.  They had a lot of abuse as young

3  children.  I know the Court knows that.  All of those things,

4  your Honor, doesn't make it an excuse for Mr. Lee and what

5  had happened.  Up until this point, your Honor, he's always

6  lead a law-abiding life.  He's a very, very hard worker.  He

7  was collecting retirement from a manufacturing position he

8  had with GM.  He's always supported his family.  He deeply

9  regrets what he's done.  He's at a time -- stage in his life

10  where I think it's baffling to him that he's put himself in

11  this position.  If there was some kind of explanation, I know

12  he'd want the Court to know it but he has no good explanation

13  for it at this point, Judge.  Again, he has no excuse so with

14  that in mind I'm asking the Court to impose a sentence of no

15  worse than 108 months given the fact that your Honor applied

16  the two level vulnerable victim enhancement.  That is a

17  guideline sentence.  It's a low end of the guidelines at 108

18  months but it also includes a number of various enhancements

19  that Mr. Lee did not object to and again, your Honor, accepts

20  responsibility for knowing that he was a pastor in his

21  position and that people relied on him in that capacity.

22          With that in mind, your Honor, I think in the

23  Court's consideration, background, characteristics of

24  Mr. Lee, and all the enhancements in this case, that a

25  sentence of 108 months is certainly appropriate and would be

1    a just sentence in this matter, your Honor.

2                    Thank you.

3                    THE COURT:  All right.  I think the Court so

4    far has followed the Booker formula with respect to how we

5    arrived at where the sentencing range is going to be.  The

6    Court, of course, has considered the guidelines and

7    considered all the factors and all the statements in the

8    guidelines and we've addressed the area of contention with

9    respect to vulnerable victim.

10                    Now, if the Court is thinking about it,

11   entertaining a guideline sentence and it is, there are

12   certain things that might drive the Court one way or another

13   within the framework of those guidelines.  So I need you to

14   address, if you wish to address, some of the things that the

15   Court has knowledge of that might drive the Court to a higher

16   position within the guideline range and one of the things is

17   the fact that the victim has informed probation that the

18   defendant on two prior occasions had improper contact with

19   minors.

20                    Do you want to address that or you don't?

21                    MISS PEEBLES:  Your Honor, I can tell the

22   Court that Mr. Lee has adamantly denied any kind of contact

23   with any other minor other than the victim in this case, and

24   he stood by that from the beginning.  He had two

25   extramarital affairs with women that were over the age of 18

1    and it was earlier on in his marriage which he disclosed to

2    the probation officer, Bruce Van Tassel.  And he acknowledged

3    that and admits that, your Honor.  He has never had any kind

4    of contact and I don't believe there's anything factually to

5    support that, Judge.  I do note that Mr. Lee, when he was

6    with the victim in this case, told her that he had an

7    extramarital affair on two separate occasions and they were

8    with older women and he was in his 20s at the time it

9    happened, your Honor.  And again, aside from that, he's

10   always been faithful in his marriage other than those two

11   times before, your Honor, and they were not with minors and

12   he said that from the beginning, your Honor.

13                THE COURT:  Well, there's information before

14   the Court to the contrary because there's an admission made

15   by the defendant to the victim and that's been transmitted to

16   the Court.  The other aspect of it, and I don't want to get

17   into any details of it, is there is an allegation a family

18   member is involved in that type of conduct also.  So the

19   Court is aware of that and the information comes to the Court

20   as it comes to it and the Court understands that it's got to

21   decide if that information should play a part in the

22   sentence.

23                Mr. Lovric?

24                MR. LOVRIC:  Do you want me to address that

25   particular issue or my sentencing?

1            THE COURT:  You can address anything you'd

2    like because I know you will anyway.

3            MR. LOVRIC:  I'll try to be very brief, Judge.

4    I just wanted to remind the Court that Miss Thomsen wanted to

5    briefly address the Court before the sentence.

6            THE COURT:  I'm waiting for that I want to

7    make sure we get the attorney's versions out first.  I also

8    have to hear from Mr. Lee.  I'm going to listen to Miss

9    Thomsen of course.

10            MR. LOVRIC:  As far as the issue the Court

11    raised, I think from our standpoint the Court should and is

12    allowed to consider all factors and facts that have been

13    presented to it in the presentence report, in addition to

14    these statements and allegations of prior conduct.  I know in

15    paragraph 64 there's information about a prior abuse of

16    another person in Mr. Lee's past life further back.  Those

17    are all factors, yes.  I think the Court should and can, as

18    well as all the other factors, address that in fashioning the

19    sentence.

20            My input to the Court in terms of a sentence

21    is I think stating the obvious to the Court, and we've stated

22    this before, which is I don't believe that any of us really

23    can intellectually comprehend the type of harm that Mr. Lee

24    has caused to not only this minor but to their family.  I

25    know that Miss Thomsen is going to speak and talk about some

1  of the effects and harm, but I'm not sure that the defendant

2  even really fully grasps the severity of the harm that he's

3  caused.  I think he understands the actions but the victim in

4  this case, in most people's view, is probably going to be

5  dramatically affected for many, many years and perhaps for

6  her entire life.  The family equally so.  The other siblings,

7  the parents, grandparents.  Its a domino effect that just I

8  think goes beyond belief unless you're in that family or

9  unless you're one of the people that is close to that family.

10 So, the amount of harm -- and we had a debate over

11 restitution but the amount of harm that's been caused here

12 will never -- Mr. Lee will never be able to put that to the

13 way it was or to rectify it or address it.

14           And so far as the sentence goes, Judge, I

15 think this Court ought to keep focused, as I know this Court

16 does, but it ought to keep focused on the victims, not on

17 Mr. Lee.  To be quite honest, Judge, Mr. Lee deserves

18 everything that the law has to give him and then plus some.

19 The law is the law but the Court I think should focus on the

20 real place where focus needs to be addressed and that is the

21 victims, the victim's family, the people that are really the

22 casualties of Mr. Lee's conduct and in doing so, punish

23 Mr. Lee for what he has done to those victims.

24           THE COURT:  All right.  Miss Thomsen, did you

25 want to come forward to address the Court?  There's no formal

procedure here.  You can just tell me whatever it is you wish

to say.  We'll all listen to you.

MRS. THOMSEN:  I'm probably going to read just

because it's easier for me.

THE COURT:  Sure.  That's fine.

MRS. THOMSEN:  Good morning, your Honor.

First, I'd like to start by saying thank you to this Court

for allowing me to speak.  I also know that you have read our

family's victim impact statements and although I do not wish

to repeat most of it, I do feel that it's important to give

you some family history so that you can see more of the

effects that this crime has had on our family.

In 1990 Mike and I decided to start farming

for ourselves.  Our goal was to realize Mike's life-long

dream of owning the Thomsen's third generation family farm.

Over the next eight years we had some serious struggles in

our marriage, in our finances and the farm.  But then we

became determined to make it all work and with God's help it

did.  In the past eight years Mike has become the best

husband and dad that you could ever ask for.  Our farm began

to thrive.  Our herd production went from 25 pounds of cow a

day to 65 pounds of cow a day.  Although it did not work out

that we were able to buy the Thomsen's farm, we did buy my

parents' farm.  Our family was happy.  So many people

commented to me about my children, how good and how happy

1   they were.  They would say things like Candy's so sweet or

2   David is just a courteous young man, and Elizabeth is such a

3   happy-go-lucky girl.  She always has a beautiful smile on her

4   face.  People also told me what a joy it was to watch my

5   children.  They even commented on the bond of love that our

6   family has for one another.  Edwin, our seven-year old,

7   talked with a counselor recently and she told me what a

8   well-rounded, intelligent, skilled and very pleasant young

9   man that he was and she also told me that this only came from

10  good parenting skills.

11          Lewis Lee came into our lives about four years

12  ago.  Before he had come, Mike and I saw a need for the

13  pastor in our church to have a good Christian friend and

14  confidant, and because Mike was available during the day and

15  Lewis liked to hunt and fish, we allowed him into our lives.

16  I have learned since then that both of our families saw from

17  the very beginning that Lewis was only interested in

18  Elizabeth.  I still can't comprehend how a man can call

19  himself our pastor and friend and set out to betray and hurt

20  us and our family the way that Lewis did.  Lee did not come

21  into a bad situation and make it worse.  He came into a very

22  good situation and made it horrible.

23          I have felt like I'm living a very long and

24  terrible nightmare.  The only problem is I never wake up and

25  it never goes away.  I recently had a miscarriage that was

caused mostly from stress.  Our farm, as you know, is
suffering and Elizabeth, my happy-go-lucky girl, has been
very confused, hurt, angry, and not very happy at all.  Our
happy family is not so happy anymore.

I did not want Lewis to gloat at all the pain
and destruction that he has caused though.  For you see,
after losing my baby I seriously contemplated suicide and did
not want to go on any longer.  The pain of life seemed too
great but during the time in the past month, I've realized
that I am a fighter and by the grace of God all mighty and
the determination, our marriage, farm and our family will
survive this.  I will not let this man destroy mine or
Elizabeth's lives.  We will be stronger people some day for
what we have gone through and we can help someone else maybe
get through a similar situation.

I know that Lewis will have to answer to God
some day and I also know that there are consequences here on
earth for your actions.  No mother should ever have to worry
about a child disappearing in the middle of the night, not
knowing if she's alive or dead or what this man had done with
her.  No father should ever have to feel the pain of losing
his little girl to his best friend and pastor.  Then have the
pain of knowing in his heart that he is the protecter of the
family and feeling that he should have been able to do
something to stop it.  He did try to stop it but after those

1   attempts Lewis took her away in the middle of the night.

2   Lewis may think that he is winning some sick game of his but

3   I'm asking you to put him in checkmate for good.  I'm asking

4   this Court to give him the maximum sentence that is allowed

5   for these crimes.

6                   THE COURT:  Let me ask you this, ma'am, have

7   you made plans to send your daughter away for the therapy

8   you've heard discussed today?

9                   MRS. THOMSEN:  Your Honor, I apologize for not

10  getting this in sooner.  I didn't even realize that we could

11  claim that for restitution.  Because of Elizabeth's state

12  and, yes, she did have prior problems before Lewis, but as

13  our pastor Lewis was also counseling her for them when he did

14  what he did to her.  And it's hard for me -- I don't want to

15  send her away.  It was very hard for her to be away from her

16  before, but I know that we have to do what's best for her.

17  And right now I feel that she needs something more intensive

18  than just once a week counseling.

19                  THE COURT:  Thank you very much.  Thanks for

20  coming forward.  I know it was very difficult for you to do

21  that.

22                  MRS. THOMSEN:  And you had questions about my

23  daughter Anna as well?

24                  THE COURT:  If you want to address that, sure.

25                  MRS. THOMSEN:  The reason that I made that

1  comment was because I noticed that Anna had been touching her

2  private areas a lot.  And I asked the counselors about it and

3  we decided that really, you know, we didn't really want to

4  force anything -- that's worse on a child to try to force it

5  out of them so -- but I did want to make the Court aware of

6  that.

7                THE COURT:  All right.  I appreciate that.

8  Thank you very much.  Okay.

9                Mr. Lee, would you like to address the Court

10  before I sentence you, sir?

11                THE DEFENDANT:  Respectfully, no, your Honor.

12                THE COURT:  All right.  Anything else from

13  either side?

14                MISS PEEBLES:  No, your Honor.

15                MR. LOVRIC:  No, Judge.

16                THE COURT:  Do you know of any legal reason

17  why I shouldn't impose sentence upon Mr. Lee?

18                MISS PEEBLES:  No, your Honor.

19                THE COURT:  Mr. Lee, do you know of any legal

20  reason I shouldn't impose sentence upon you?

21                THE DEFENDANT:  No, your Honor.

22                THE COURT:  The Court as it's already stated

23  has considered carefully the guidelines in this case and all

24  of the written material and oral material that's been

25  presented to the Court that surrounds this particular

1  instance that bear on the guidelines.  The Court has also

2  considered the statutory sentencing purposes set forth in

3  18 US Code Section 3553(a) and has considered the severity

4  and enormity of your criminal behavior.  I've considered your

5  attributes and characteristics, what's gone on in the past,

6  both good and bad and the Court -- as the Court must.  I've

7  considered the need to punish you for what you did here and

8  it's clear to the Court that you've gone a long way to

9  destroy the lives, not only of your victim, but of your

10  victim's parents and her siblings and the Court feels that

11  it's just beyond my power to describe how heinous this crime

12  is.

13         The Court has also considered that the public

14  has to be protected from any future conduct and that's why

15  the Court was making inquiry as to what happened in other

16  instances before because the Court believes that that means

17  that you're more dangerous.  You've got a problem that just

18  surfaced because of the conduct here and that's going to be a

19  major factor in the Court deciding where you should be placed

20  within the guideline range.

21         Also, the Court hopes that somehow you can be

22  rehabilitated but the Court doesn't have much faith in that

23  possibility.

24         So, the Court has reviewed and considered all

25  pertinent information in the presentence report and the

1  addendum and the other matters presented to it here today.

2  And the Court finds that your total offense level is 30, your

3  criminal history category is a 2, and therefore your

4  guideline range is 108 to 135 months.

5           So, upon your plea of guilty to counts one,

6  two, three, and four of the indictment, it's the judgment of

7  this Court that you're hereby committed to the custody of the

8  Bureau of Prisons to be imprisoned for a term of 135 months.

9  This sentence represents terms of imprisonment of 135 months

10 on each of counts one, two, and three, and 60 months on count

11 four.  All terms of imprisonment are to run concurrently with

12 each other.  The defendant is sentenced at the high end of

13 the guideline range because of the actual physical abuse of

14 the victim, the 15-year-old girl, and the other reasons

15 already stated upon the record by the Court.

16          Furthermore, the defendant took across the

17 country -- took her across the country and was on the run

18 from authorities for about a month during which time the

19 victim's family did not know where she was.  Also, during

20 this time period the defendant continued to have sexual

21 relations with the young lady.  The Court also orders that

22 this sentence run concurrent to the sentence imposed by

23 Chenango County Court and I believe you've already been

24 sentenced on that matter?

25          THE DEFENDANT:  Yes, your Honor.

1       THE COURT:  Upon your release from

2  imprisonment you shall be placed upon supervised release for

3  a period of 25 years on counts one, two, and three, and three

4  years on count four.  All terms of supervised release are to

5  run concurrently.  While on supervised release you shall not

6  commit another federal, state or local crime and shall comply

7  with the standard conditions that have been adopted by this

8  Court and the following special conditions:  You shall

9  cooperate in the collection of DNA as directed by the

10  probation officer.  You shall provide the probation officer

11  with access to any requested financial information.  You

12  shall not have any direct contact with a person under the age

13  of 18 unless it is supervised by a person approved by the

14  probation office.  You shall not have any indirect contact

15  with a person under the age of 18 through another person or

16  through a device, including a telephone, computer, radio or

17  other means, unless it's supervised by a person approved by

18  the probation officer.  You shall reasonably avoid and remove

19  yourself from situations in which you have any other form of

20  contact with a minor.  You shall not be in any area in which

21  persons under the age of 18 are likely to congregate, such as

22  school grounds, child care centers or playgrounds without the

23  permission of the probation officer.  You shall not have any

24  direct or indirect contact with the victim's family.  You

25  shall register with the state sex offender registry agency of

1  any state where you reside or are employed or carry on a

2  vocation or are a student.

3          You shall participate in a mental health

4  program which will include, but will not be limited to,

5  participation in a treatment program for sexual disorders.

6  The program shall be approved by the United States Probation

7  Office.  Your supervised release may include examinations

8  using a polygraph to obtain information necessary for

9  supervision, case monitoring and treatment.  You shall answer

10 the questions posed during the polygraph examination

11 truthfully, subject to your right to challenge in a court of

12 law the use of such statements as violations of your Fifth

13 Amendment rights.  In this regard you shall be deemed not to

14 have waived your Fifth Amendment rights.  The results of any

15 polygraph examination shall be disclosed to the United States

16 Probation Office and the Court and shall not be further

17 disclosed without the approval of the Court.

18          You shall contribute to the cost of any

19 evaluation, testing and/or treatment and/or monitoring

20 services rendered in an amount to be determined by the

21 probation officer based upon the ability to pay and your

22 availability of any third-party payments that you might have.

23          It's further ordered that you pay restitution

24 in the two amounts.  One amount of $13,933.48 as detailed by

25 the information the Court is going to append to the record

1   and the second amount will be $52,800 for treatment rendered

2   to the victim in an attempt to have her life straightened

3   around as much as possible.  All payments shall be forwarded

4   to the US District Court in Syracuse, New York.

5           While you're in prison you shall make minimum

6   monthly installment payments of 25 percent of your gross

7   monthly income.  Upon release from imprisonment you shall

8   make minimum monthly installment payments of 10 percent of

9   your gross monthly income or $200, whichever is greater.  You

10  shall also pay to the Clerk of the Court a special assessment

11  of $400, which is due immediately.  The Court finds based on

12  your financial resources, projected earnings and obligations,

13  as well as your income, that you don't have the ability to

14  pay a fine and will not order a fine.

15          Both you and the government have the right to

16  appeal this sentence under certain circumstances and you have

17  to file an appeal within ten days of the date of this

18  sentence.

19          There's nothing to dismiss because he pled

20  guilty to all counts?

21          MR. LOVRIC:  That's correct.

22          THE COURT:  Court stands adjourned in this

23  matter.

24          (Court stands adjourned)

25

1        C E R T I F I C A T I O N

2

3

4        I, VICKY A. THELEMAN, RPR, CRR, United

5   States Court Reporter in and for the United States

6   District Court, Northern District of New York, do

7   hereby certify that I attended at the time and place

8   set forth in the heading hereof; that I did make a

9   stenographic record of the proceedings had in this

10  matter and cause the same to be transcribed; that

11  the foregoing is a true and correct copy of the same

12  and the whole thereof.

13

14

15                        _____

16                        VICKY A. THELEMAN, RPR, CRR

17                        United States Court Reporter

18                        US District Court - NDNY

19

20

21  Dated:  November 6, 2006.

22

23

24

25